*422 OPINION of the C^ourt, by
Ch. J. Bibb.
— In May 1805, Miss Ruth Wilmot exhibited her bill against Thomas A. Thompson, setting forth that in October 1790, she exchanged a slave named Will, of whom she was possessed in the state of Maryland, for a slave called Harry, the property of the said defend a»t, who was about to remove to Kentucky ; that one of the moving considerations in said exchange was the express stipulation on the part of said defendant, that he would manumit and emancipate said Will in seven years ; that the defendant on the day of the exchange made a memorandum of the said agreement, and delivered it to her as his act and deed t that said slave was persuaded by Thompson, to leave her and go with him to Kentucky, by the prospect of freedom thus held out to him ; that in said instrument it was inserted that if the said Will did not. choose to live with said defendant in Kentucky, he *423 'should be at liberty to return to Maryland after one year of the term had expired ; that said defendant in a few months after said agreement arrived in Kentucky with said Will, who faithfully served the said term of seven years, and has ever since been held in slavery by the defendant she states that the slave had instituted a suit at law in the said court to recover his freedom, but had failed because the said instrument was held not to amount to an actual and formal emancipation, and the slave therefore not entitled to sue. She therefore prays a specific execution of the said agreement, which she exhibits ; and for an account and payment for the value of the service of the slave beyond the said term of seven years, during the illegal detention of the said slave, by the said defendant so wrongfully committed ¡ and for general relief.
The defendant admits the execution of the instrument in the bill exhibited, and all the material allegations of the bill; denies some of the minor inducements in the bill alleged — —avers that the agreement was made with the slave only, but under the inspection of the complainant; he insists that Will was dissatisfied and wished to return to Maryland ; that he wrote to the complainant informing her thereof, and intending to send the said slave to her as soon as the dangers from Indian hostilities would permit ; but received a letter annexed, dated in September 1792, in answer 5 and also received another letter, lost or destroyed, requesting him not to send the slave except with Messrs. Kelly or Owings ; that he had prepared him for the journey, but received a letter from the complainant, da-*ed September 26th 1793 ; the letter of the 4th of September 1792, states that she is willing and ready to receive Will, as he is dissatisfied with the country, and to give up Harry, at any time that the defendant shall send in Will ; but that she thought Will was “ much to blame.” The letter of 1793, states that she has been informed that by an act of Maryland, slaves which have been kept out of the state more than a year, were prohibited from being carried back ; that therefore he must keep Will, as she sant think of giving up Harry, and running the risk of losing Will by that act. Therefore she hoped the defendant would not send Will, but use him well, and “ give him his freedom at the time *424 ¾greed on by us.” He farther insists that Will was re» ■fractory and discontented for the first four or five years | “ that by the contract really made with Will in the presence of the complainant, this defendant had the privilege of returning him at any time within seven years, but it was omitted in drafting the exhibit referred to in. the billthat he is yet willing to return Will to the complainant and receive Harry»
Upon hearing the cause on the bill, answer, exhibits, depositions, &e. the circuit court decreed a specific execution of the agreement, and a manumission of Will | caused a jury to be empanelled to assess the damages by the said detention of Will, beyond the said period of seven years in the bill complained of; which being assessed at 691 dollars 25 cents, were decreed to be paid by the defendant to the complainant in trust for said negro Will; to which decree the defendant prosecutes this writ of error ; and assigns for cause, 1st. that the bill should have been dismissed ; 2d. that the court erred in decreeing an emancipation of the negro ; 3d. “ they erred in decreeing a compensation for the time they supposed the slave was improperly held in slavery.”
The material statements in the bill are so fully supported by evidence written and oral, that the mind cannot for a single moment withhold an assent to their absolute verity. Even the answer of Thompson does not afford a colorable pretext for withholding a performance of his engagement, solemnly made, under circumstances interesting to humanity and most obligatory upon a man of good conscience and unpolluted faith. The contract ⅛ itself was not forbidden fay any political institution, but is in unison with the dictates of natural right, and was a most becoming subject for the court of chancery to act upon specifically.
If the claim to emancipation had depended upon general municipal regulations, upon the construction of statutes, or was of obscure or occult derivation, so that the holder might reasonably have believed that he had a property in the negro Will, we should have declared without hesitation that only nominal damages should have been allowed for the detention in slavery. But the present case is devoid of all such excuses» The claim to freedom originated in the agreement of the plaintiff, the very letters offered by him in his defence, were an ad- *425 lEcnkiofl to him to perform his agreement; he was re* minded of it from time to time, it had been asserted in the name of the negro in a court of justice, but was defeated by the very breach of faith of which the plaintiff had been guilty, and from the expiration of the term in the contract mentioned, to the time of rendering the decree in the court below, we can see no color of claim on which his conscience could have reposed. The assessment of damages was not succeeded by any application to the court below to set it aside ; and here the error assigned goes only to the principle upon which the damages were decreed, not to the quantum assessed according to that principle.
Upon the whole, this court is of opinion that there is no error in the record in manner as the plaintiff hath complained.- — Decree affirmed.